Westlaw.
MHU Law Library

120 F.2d 73
120 F.2d 73
(Cite as: 120 F.2d 73)

Page 1

Circuit Court of Appeals, Third Circuit.
UNITED STATES
v.
PATTON.
No. 7681.

May 3, 1941.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Walter Addison Patton was convicted of entering national bank with intent to commit larceny and of larceny from national bank, and he appeals.

Reversed.

West Headnotes

**[1] Criminal Law ⚷11**
110k11 Most Cited Cases
When a federal statute uses a term known to the common law to designate a common law offense and does not define such term, courts should apply the common law meaning.

**[2] Larceny ⚷1**
234k1 Most Cited Cases
"Larceny" at common law is the taking and removing by trespass of personalty which the trespasser knows to belong either generally or specially to another with the felonious intent to deprive him of his ownership therein.

**[3] Larceny ⚷13**
234k13 Most Cited Cases
An essential element of "larceny" is that the taking is by "trespass", that is, without owner's consent.

**[4] False Pretenses ⚷20**
170k20 Most Cited Cases
Where owner intended to part with the property in goods, as distinguished from mere possession, though fraudulent means were used to induce him to do so, the offense is that of "cheat" and not of "larceny" as a "felony".

**[5] False Pretenses ⚷20**
170k20 Most Cited Cases
In determining existence of "larceny" at common law, distinction is drawn between giving up possession of chattel for a special purpose to another, who by converting it to his own use is held to have committed a "trespass", and hence "larceny", and the case of one who, although induced by fraud or trick, nevertheless actually intends that title to the chattel shall pass to the wrongdoer.

**[6] Larceny ⚷62(2)**
234k62(2) Most Cited Cases
Proof that defendant cashed altered and forged checks on national bank did not show "larceny" at common law, and hence did not warrant conviction of entering national bank with intent to commit larceny or committing larceny from national bank. 12 U.S.C.A. § 588b.

*74 W. George Negley, of Pittsburgh, Pa., for appellant.

C. James Todaro, of Washington, D.C. (George Mashank, of Pittsburgh, Pa., on the brief), for appellee.

Before MARIS, JONES and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

In the first two counts of an indictment which alleged the violation of section 2 of the bank robbery act of May 18, 1934, as amended by the act of August 24, 1937, c. 747, 50 Stat. 749, 12 U.S.C.A. 588b, [FN1] the defendant was charged with entering a national bank with intent to commit larceny therein and in the third count with taking and carrying away certain money and property exceeding $50.00 in value belonging to a national bank with intent to steal and purloin the same. The stipulated facts are that the defendant was employed as chief clerk of the Linde Air Products Company of New York at its branch plant located at Trafford, Pennsylvania. The Linde Company maintained a petty cash account in the First National Bank and Trust Company of East Pittsburgh in Pennsylvania. The defendant was authorized to make deposits in this account, and, provided he had the co-signature of his fellow employee, J. D. Jackson, to draw checks against this account. The Linde Company drew a check on a New York bank payable to its petty cash account in the East Pittsburgh bank. This check

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EX.(C).

Westlaw.

120 F.2d 73                                                                                                    Page 2
120 F.2d 73
(Cite as: 120 F.2d 73)

came into the possession of the defendant who altered the amount from $1,055.38 to $11,055.38 and deposited it on June 25, 1938 in the Company's petty cash account in the East Pittsburgh bank. The defendant drew a check dated June 25, 1938, upon the Linde Company's petty cash account in the sum of $10,832.63, and forged Jackson's signature thereto. On June 27, 1938 the defendant appeared in person at the East Pittsburgh bank, presented this forged check to a teller and received in cash $10,832.63, which sum he converted to his own use.

> FN1. Section 2(a) of the act, as amended, provides in part that '* * * whoever shall enter or attempt to enter any bank, or any building used in whole or in part as a bank, with intent to commit in such bank or building, or part thereof, so used, any felony or larceny, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; * * *'.

[1] The defendant entered a plea of 'not guilty' and waived a jury trial. The court found the defendant guilty of a violation of the statute as charged in the indictment. The government states that the question involved on this appeal is whether under the facts above stated the defendant was guilty of entering a national bank *75 with intent to commit larceny therein. It seems to be conceded that to take and carry away from a bank property belonging to it with intent to steal and purloin the same, as charged in the third count, is the equivalent of committing larceny in the bank. We shall accordingly limit our consideration to the question stated by the government. Its answer is entirely dependent upon whether what the defendant did in the East Pittsburgh bank amounted to larceny. Nowhere in the statute is the word 'larceny' defined. It is, however, well settled that when a federal statute uses a term known to the common law to designate a common law offense and does not define that term, courts called upon to construe it should apply the common law meaning. United States v. Palmer, 3 Wheat. 610, 16 U.S. 610, 4 L.Ed. 471; United States v. Armstrong, Fed. Cas. No. 14,467, 2 Curt. 446; United States v. Outerbridge, Fed. Cas. No. 15,978, 5 Sawy. 620; United States v. Coppersmith, C.C., 4 F. 198; United States v. Clark, D.C., 46 F. 633.

[2][3] 'Larceny, at common law, is the taking and removing, by trespass, of personal property which the trespasser knows to belong either generally or specially to another, with the felonious intent to deprive him of his ownership therein.' Clark's Cr. Law (3rd Ed.) 305. One of the essential elements of the crime is that the taking is by trespass, that is, without the consent of the owner. So in Reg. v. Ashwell, 16 Q.B.D. 190, A. L. Smith, J. said (p. 195): 'To constitute the crime of larceny at common law, in my judgment there must be a taking and carrying away of a chattel against the will of the owner, and at the time of such taking there must exist a felonious intent in the mind of the taker. If one or both of the above elements be absent there cannot be larceny at common law. The taking must be under such circumstances as would sustain an action of trespass. If there be a bailment or delivery of the chattel by the owner, inasmuch as, among other reasons, trespass will not lie, it is not larceny at common law.'

In Hawkins' Pleas of the Crown Vol. 1, Curwood's Ed., p. 142, it is said: 'It is to be observed, that all felony includes trespass; and that every indictment of larceny must have the words felonice cepit, as well as asportavit; from whence it follows, that if the party be guilty of no trespass in taking the goods, he cannot be guilty of felony in carrying them away.'

That the defendant in the present case did not take the money from the bank teller against his will is undisputed. The fact that his consent was obtained by means of fraud and forgery is relied upon by the government to sustain its position that there was in fact no consent. On this point the opinion of Chief Justice Tilghman, speaking for the Supreme Court of Pennsylvania, in Lewer v. Commonwealth, 15 Serg.& R. 93, is so apt that we quote pertinent portions thereof. He said (15 Serg.& R.page 96):

'It is of the essence of larceny, that the taking be invito

Westlaw.

120 F.2d 73                                                                                                           Page 3
120 F.2d 73
(Cite as: 120 F.2d 73)

domino, without the will of the owner. Fost. 123; 4 Bl.Com. 230; 2 East, C.L. 665. The ancient known definition of larceny, says Foster, is fraudulenta obtrectatio rei alienae, invito domino. Fost. 124. The question is, then, whether the defendant took and carried away the goods of the prosecutors, against their will? To a person unacquainted with legal subtleties, it would seem strange, to make it a question, whether, after a sale and delivery of goods, and a receipt given for the price of them, the vendee could be said to take them away against the will of the vendor? The argument on behalf of the prosecution is, that the consent of the vendors was fraudulently obtained, and therefore, in law, it was no consent; and the defendant, having from the beginning an intent to get possession of, and carry away the property, without paying for it, was guilty of larceny.'

The Chief Justice then examined the English common law authorities prior to 1776 which apparently sustained the prosecutor's argument. Concluding that they were all cases in which the consent was held to be void because the owner of the goods had no intent to part with the property, but only the possession for a particular purpose, he continued (15 Serg.& R. page 98):

[4] 'But when the owner intended to part with the property, the case is different. For although fraudulent means may have been used to induce him to part with it, yet he delivered the possession absolutely, and the purchaser received the possession, for the express purpose of doing with the goods what he pleased. The owner was not deceived by the manner in which possession was taken; it was his intent that the possession should never return to him; *76 therefore, it was a case of cheat, and not of felony. I find it laid down by East, a writer of criminal law of respectable character, 'that if the owner parts with the property, by whatever fraudulent means he was induced to give credit, it is not felony.' I have seen no judicial decision, which is authority in this court, carrying the doctrine of what may be called constructive larceny, beyond the case where possession only was intended to be delivered.'

The distinction here made by Chief Justice Tilghman between the case where the owner parts with possession of the personal property to be disposed of in accordance with his directions and where the owner intends to and does part with his title to the property has been made many times by text writers [FN2] and by American [FN3] as well as English [FN4] cases at common law.

> FN2. 2 Bishop's Cr.Law (9th Ed.) p. 616: Clark's Cr. Law (Mikell's 3rd Ed.) p. 322: 'The law, however, makes a distinction where the owner intends to part with the 'property' or ownership, as well as the possession. Where the owner of goods delivers possession to the accused, intending to part absolutely with the ownership, there can be no larceny, whatever may be the intent of the taker; for, the owner having parted with the title to the goods to the accused, any conversion by the accused is not a conversion of the goods 'of another'. The fact that the possession is obtained fraudulently, and with intent to appropriate the goods, is altogether immaterial. Thus, a person who, by false and fraudulent representations, induces another to give him a thing, or to sell and deliver goods on credit, does not commit larceny.'

> FN3. Welsh v. People, 17 Ill. 339; Ross v. People, 5 Hill, N.Y., 294; Kellogg v. State, 26 Ohio St. 15.

> FN4. Rex v. Jackson, 1 Moody C.C. 119, 168 Eng.Repr. 1208; The Queen v. Joseph Barnes, 2 Den. 51, 169 Eng.Repr. 417; Regina v. Thomas, 9 Car.& P. 741, 173 Eng.Repr. 1033.

Commonwealth v. Eichelberger, 119 Pa. 254, 13 A. 422, 4 Am.St.Rep. 642, relied upon by the government and by the district court, reaches a different result upon the facts there presented but does not question the correctness of the statement of the common law announced in Lewer v. Commonwealth, supra. On the contrary, Mr. Justice Paxson stated (119 Pa. page 264, 13 A. page 425): 'Lewer v. Commonwealth was well decided, and we adhere to every word there said.' He distinguished the case solely upon the facts. The defendant was the maker of a promissory note for $1,600. He paid the discount charge for renewing the note, procured the old note from the bank teller and gave the teller a new one for $16. The defendant was indicted for larceny of the $1,600 promissory note. The Supreme Court stated (119 Pa. page 265, 13 A. page 426): 'The bank parted with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

120 F.2d 73
120 F.2d 73
(Cite as: 120 F.2d 73)

Page 4

the possession. If it also intended to part with its property represented by the note, we have no hesitation in saying the offense of the defendant was not larceny, whatever else it may have been.' Upon the facts the Supreme Court found that the bank did not intend to part with its property in the note considered as an evidence of debt. It therefore concluded that the taking, being without the consent of the owner, was a trespass and that the defendant was guilty of larceny.

[5][6] It will be seen that the distinction drawn by the common law is between the case of one who gives up possession of a chattel for a special purpose to another who by converting it to his own use is held to have committed a trespass, and the case of one who, although induced by fraud or trick, nevertheless actually intends that title to the chattel shall pass to the wrongdoer. It may well be that the distinction is artificial and illogical and was evolved by judges in a humane search for legal methods for saving defendants from the consequences following conviction upon a charge of larceny which at the time many of the cases were decided was a capital offense. Commonwealth v. Eichelberger, supra. We are nevertheless here concerned solely with the question whether the government has proved facts which would sustain a conviction for larceny at common law. Our conclusion is that the facts would not sustain such a conviction.

The judgment of the district court is reversed.

120 F.2d 73

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.